UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SHAWN GOODE,<br><br>Petitioner,<br><br>v.<br><br>RUSSELL PERRY, et al.,<br><br>Respondents. | Case No. 3:18-cv-00362-RCJ-CSD<br><br>ORDER |

Shawn Goode's pro se 28 U.S.C. § 2254 habeas corpus petition is before the court for final adjudication on the merits (ECF No. 7).  As discussed below, the petition is denied.

## I.   Background & Procedural History

In August 2012, a jury found Goode guilty of 4 counts of robbery with use of a deadly weapon and 4 counts of burglary with a firearm (exhibit 40).[1] The convictions stemmed from robberies in Reno, Nevada at two dry cleaners, a bakery, and a cellular phone store during which he brandished an Airsoft gun. The state district court sentenced him to terms amounting to approximately 15 to 90 years.  Exh. 47. Judgment of conviction was filed on November 6, 2012. Exh. 46.

The Nevada Supreme Court affirmed Goode's convictions, and the Nevada Court of Appeals affirmed the denial of his state postconviction habeas corpus petition. Exhs.

---

[1] Exhibits referenced in this order are exhibits to respondents' motion to dismiss, ECF No. 11, and are found at ECF Nos. 12-15.

1

77, 152. Goode dispatched his federal habeas corpus petition for filing in July 2018 (ECF No. 7). Respondents have now answered the remaining claims, and Goode has replied (ECF Nos. 34, 37).

## II. Legal Standard

**AEDPA Standard of Review**

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

### III.     Instant Petition

#### a. Claims Raised on Direct Appeal

**Ground 6**

Goode claims that the State presented insufficient evidence to convict him of use of a "firearm" or "deadly weapon" in violation of his Fifth Amendment due process rights (ECF No. 7, pp. 29-31). He alleges that the jury instructions on what constitutes a deadly weapon or firearm relieved the prosecution of its burden of proof regarding whether the Airsoft gun –which Goode refers to as a "toy gun"  --was designed to be used as a deadly weapon and whether it met the statutory definition of a firearm.

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309 (1979) (citing *In re Winship*, 397 U.S. 358 (1970)).  On federal habeas corpus review of a judgment of conviction pursuant to 28 U.S.C. § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id*. at 324.  "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n.16.  On habeas review, this court must assume that the trier of fact resolved any evidentiary conflicts in favor of the prosecution and must defer to such resolution. *Id*. at 326.  Generally, the credibility of witnesses is beyond the scope of a review of the sufficiency of the evidence. *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

At Goode's trial, Stephanie Ozuna testified that she was working at a Cricket wireless store on October 1, 2011, when a man came in wearing a Scream mask and all

black clothing. Exh. 31, pp. 87-101.[2] He made Ozuna open the cash registers, and he emptied them. Ozuna saw that he was holding a gun at his side, which he lifted slightly when he was directing her.

Oliver Espino and his girlfriend Sally Erisey both testified that they were eating at an outside table at a restaurant next to the Cricket store that day. Exh. 32, pp. 6-30. Espino saw a man wearing a black hoodie and carrying a gun put on a mask and enter the Cricket store. Shortly thereafter, the man emerged, took off his mask, smiled at the two, and ran. A brown Jeep Cherokee then sped out of a neighboring parking lot. Both Espino and Erisey identified Goode as the robber with one hundred percent certainty.

Young Son testified that she and her husband owned a dry cleaners. Exh. 29, pp. 14-28. On February 23, 2012, a man walked in wearing a dark hoodie and a mask, showed her his gun, and told her to open the register and go to the back of the store. He emptied the register and left.

Zak Gilbert testified that on February 26, 2012, he came out of the back office of the bakery he owns and was confronted by a man wearing a dark hoodie and a ski mask. *Id*. at 72-96. Gilbert noticed that the man had very blue eyes. The man partially pulled a gun out of his pocket and told Gilbert that this was a robbery. He directed Gilbert to open the cash register and then go into the restroom. When Gilbert heard the man leave, he followed him out the back door. He saw a dark Jeep Cherokee with no license plate drive very fast out of the parking lot. Gilbert jumped into his car and pursued the Jeep. He caught up to the man at an intersection and got a good view of him without a mask. He later identified Goode and one other man from a photo lineup as the possible

---

[2] The court makes no credibility findings or other factual findings regarding the truth or falsity of evidence or statements of fact in the state court record. The court summarizes the same solely as background to the issues presented in this case, and it does not summarize all such material. No assertion of fact made in describing statements, testimony, or other evidence in the state court constitutes a finding by this court. Any absence of mention of a specific piece of evidence or category of evidence does not signify the court overlooked it in considering Goode's claims.

perpetrators.  Gilbert testified that when he saw Goode in person, he was one hundred percent certain Goode was the robber.

Hank Jin, owner of another dry cleaners, testified that on March 1, 2012, a man entered his store. *Id*. at 122-133. The man left the store, then came back in with a mask, showed Jin a gun and told him to open the cash register. The man wore a black hoodie, black mask, and had blue eyes. When the man left, Jin followed him outside and saw him without a mask. Jin said he was one hundred percent certain Goode was the robber.

Matthew Noedel, a forensic scientist and Washoe County Crime Laboratory consultant, testified that he was specifically tasked by the crime lab to examine the weapon in question to determine whether it was capable of or designed to fire a metallic projectile by means of spraying gas or air.   Exh. 31, pp. 52-86. He explained that the weapon was an Airsoft gun, a more modern version of old-fashioned BB guns. He said that the weapon had a pressurized cartridge so that when you pull the trigger a burst of CO-2 is released, which pushes a pellet out and down the barrel. The prosecutor asked: "Is this weapon designed to be capable of firing a metallic projectile, either a pellet or a BB-type metallic projectile?" And Noedel responded: "Yes, it can." *Id*. at 59. He also documented how close it looked to an actual, lethal type of firearm. The Airsoft comes with a "blaze orange" tip to distinguish it from an actual gun, but the orange tip had been removed from the weapon in question. Noedel acknowledged on cross-examination that he had never personally fired a metallic projectile from an Airsoft gun.

NRS 193.165(1) provides that an provides that an "additional penalty" of "not less than 1 year and a maximum term of not more than 20 years" may be imposed upon "any person who uses a firearm or other deadly weapon . . . in the commission of a crime." NRS 193.165(6) provides:

> 6. As used in this section, "deadly weapon" means:
>
> (a) Any instrument which, if used in the ordinary manner contemplated by its design and construction, will or is likely to cause substantial bodily harm or death;
>
> (b) Any weapon, device, instrument, material or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing substantial bodily harm or death; or
>
> (c) A dangerous or deadly weapon specifically described in NRS 202.255, 202.265, 202.290, 202.320 or 202.350.

The relevant version of NRS 202.265(5)(b) defined a firearm:

(b) "Firearm" includes any device from which a metallic projectile, including any ball bearing or pellet, may be expelled by means of spring, gas, air or other force.

Jury instructions mirrored the statutory definitions of deadly weapon and firearm. Exh. 38, jury instruction nos. 22, 23. *See* discussion of ground 5 below.

The Nevada Supreme Court concluded that substantial evidence supported the verdict:

> . . . . Goode argues that the evidence presented at trial was insufficient to support the use of a deadly weapon or firearm enhancements. At trial, the State elicited testimony from a firearms expert that he had examined the device used and determined that it was capable of firing a metallic projectile. The jury could reasonably infer from this testimony that the device used was capable of firing a metallic projectile and therefore qualified as a firearm under NRS 202.265(5)(b) and consequently a deadly weapon under NRS 193.165(6)(c). [FN 3]. It is for the jury to "assess the weight of the evidence and determine the credibility of witnesses," and the jury's verdict will not be disturbed on appeal where substantial evidence supports the verdict. *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992); *see also Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981).
>
> [FN 3: To the extent that Goode argues that the expert agreed with his counsel's classification of the device as a "toy" or that the device was merely feared to be a deadly weapon but was only a replica, the jury received instructions defining a firearm and a deadly weapon and concluded that the device satisfied the definitions.]

Exh. 77, p. 5.

A forensic scientist testified specifically that the Airsoft gun used in the robberies was capable of firing a metallic projectile. Goode has not shown that no rational trier of fact could have found proof of guilt beyond a reasonable doubt with respect to the deadly weapon enhancement. *Jackson*, 443 U.S. at 324.  He has failed to demonstrate that the Nevada Supreme Court decision on federal ground 6 was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).  Accordingly, relief on ground 6 is denied.

**Ground 7**

Goode contends that the prosecutor committed misconduct during closing arguments (ECF No. 7, pp. 32-35). Goode insists that the deputy district attorney improperly stated the "Law takes the perpetrator, the robber, at his word," referenced "Fear" and the "leveling of the playing Field," and improperly referenced "our citizens," when arguing that the Airsoft gun was a deadly weapon under Nevada law.

Prosecutorial misconduct may "'so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Greer v. Miller*, 483 U.S. 756, 765 (1987), quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). To constitute a due process violation, the prosecutorial misconduct must be "'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Greer*, 483 U.S. at 765, quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985).

The Supreme Court has measured the fairness of the petitioner's trial by considering (1) whether the prosecutor's comments manipulated or misstated the evidence or implicated other specific constitutional rights of the accused; (2) whether the trial court gave a curative instruction; and (3) the weight of the evidence against the accused. *Darden v. Wainwright*, 477 U.S. 168,181- 82 (1986). The court must distinguish ordinary trial error of a prosecutor from that sort of egregious misconduct which amounts to a constitutional denial of due process. *Smith v. Phillips*, 455 U.S. 209, 221 (1982). Due

process violations warranting federal intervention are found "only where criminal trials in state courts are conducted in such a manner as amounts to a disregard of that fundamental fairness essential to the very concept of justice." *Pike v. Dickson*, 323 F.2d 856, 860 (9th Cir. 1963) (citation omitted). The question before the court is not whether misconduct denied a fair trial, but whether the state court's conclusion was an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d)(1); *see also Frazier v. Huffman*, 343 F.3d 780, 793 (6th Cir. 2003).

During closing arguments, the prosecutor argued that an Airsoft gun is a firearm and deadly weapon under state statutes. Exh. 37, pp. 4-32 (rebuttal pp. 33-44). He emphasized that under state law, any device, loaded or unloaded, which is operable or inoperable, from which a metallic projectile, including a ball bearing or pellet, may be expelled by spring, gas, air or other force is considered a firearm. *Id*. at 12-13, 33-35. He also pointed out that without the blaze orange tip, the Airsoft gun looks just like a real gun. He also said "the law takes the perpetrator, the robber, at his word; right? 'I have a gun.' He's acting like he has a gun." *Id*. at 13. The prosecutor continued:

> Take that one step further: How many of these 911 calls do you hear people say, "He had a gun?," The law says: We're not going to make the victim wait and test. What's the test for? Is the gun he's threatening you with, the gun that he says he had, is the gun he's menacing you with? Is that a real gun; right? Does the law expect -- or does reasonable society expect people to test see if it's a real gun first, before I give up my money? Well, that's unreasonable, because the test for that is death; right? You're going to wait, you're going to -- well, if you're wrong, you get shot; right? That is not a reasonable thing for society, for our citizens to have to undergo.
>
> So that is another reason why we have this. It's a deadly wager. We don't expect that from business owners. And they inflict the same fear as traditional firearms, don't they? We heard a lot about the fear. Of course Stephanie Ozuna could barely speak -- she couldn't speak. She couldn't even tell her manager what happened.
>
> Oliver Espino, who doesn't even know her, said this girl couldn't even talk, right ? So these BB guns -- toys they might be called during the defense argument -- they have the same effect as the real deal.

> So the law says: Let's level the playing field here. If a bad guy wants to use a BB gun just like it's a deadly – like a true firearm, we will take him at his word, and we'll hold him accountable for that. Because otherwise, he would get the entire benefit of: Looks like a gun; right? It inflicts the same fear. He would get the same benefit, but then when it comes back to it, he would sort of say, like the criminal subculture, "Well, hey, it was just a BB gun. Don't worry about it; right? There's no armed robbery, it's just a simple robbery, because I couldn't have killed you; right?" Another way the law levels the playing field. We don't expect that of our citizens. And that is what the law – So if you hear arguments, it comes up, and anticipate that it will, it will be an argument, or part of your deliberations, well, is this a deadly weapon? Or is this an armed robbery, or is it a simple robbery? The answer in these instructions, that I just went over, tell you it is a deadly weapon, this is an armed robbery. Because the playing field is leveled; right?

*Id*. at 13-15.

The Nevada Supreme Court rejected this claim on direct appeal:

> . . . . Goode alleges that the prosecutor engaged in misconduct during his closing argument with regard to his comments on what constitutes a deadly weapon. Goode claims that the prosecutor misstated the law when he argued that because the device looked like a firearm, it should be considered a firearm. We review for plain error as Goode failed to preserve this issue. *Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008). "Under that standard, an error that is plain from a review of the record does not require reversal unless the defendant demonstrates that the error affected his or her substantial rights, by causing actual prejudice or a miscarriage of justice." *Id*. (internal quotation marks omitted). "A prosecutor's comments should be considered in context, and 'a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone.'" *Leonard v. State*, 117 Nev. 53, 81, 17 P.3d 397, 414 (2001) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). Considering the prosecutor's comments in context, we conclude that Goode has failed to demonstrate reversible plain error.

Exh. 77, pp. 5-6.

Goode fails to demonstrate that the Nevada Supreme Court's decision that federal ground 7 lacks merit was contrary to, or an unreasonable application of, clearly established federal law. The prosecutor's comments about the effect on the victim of seeing something that looks like a gun were delivered in the context of trying to explain part of the state legislature's rationale in enacting a law prescribing that a type of BB gun could be considered a firearm and thus a deadly weapon. As discussed above with

10

respect to ground 6, substantial evidence was presented that Goode used the Airsoft gun in perpetration of the robberies and that the weapon is a deadly weapon under state law. This court does not view the prosecutor's arguments as improper. But even assuming, *arguendo*, that the comments were inappropriate, Goode has not shown that any error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (*i.e.*, harmless error analysis). Federal habeas relief, therefore, is denied as to ground 7.

### b. Ineffective Assistance of Counsel Claims

Two claims of ineffective assistance of counsel (IAC) are before the court. IAC claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id*. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id*.

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*.

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*. at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 124. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id*. at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id*. (internal quotations and citations omitted).

**Ground 4**

Goode claims that his counsel was ineffective for failing to file a motion to declare and enforce the plea agreement (ECF No. 7, pp. 22-25).

At the evidentiary hearing on Goode's state postconviction habeas petition, his trial counsel testified that the State offered a plea deal with an aggregate sentence of 10 to 25 years on July 13, 2012, and they indicated that the offer would expire on July 30. Exh. 114, pp.15-25. Counsel testified that on July 27 Goode indicated to him that he rejected the deal. Exh. 123, pp. 6-26. Counsel already had a meeting set up with Goode for July 31 and on that day, Goode told him he had changed his mind and wanted to accept the deal. Counsel immediately called the prosecutor's office and left a voicemail explaining that Goode wished to accept the plea deal. When counsel reached the prosecutor on the morning of August 1, the prosecutor told him the deal had expired.

Goode testified that he was arrested on March 1, 2012. Exh. 114, pp. 26-45. He stated that at a March 5 hearing, he informed the deputy public defender that he would accept a plea deal after he met with his actual public defender and reviewed the discovery. Multiple attorneys were conflicted out and Goode's ultimate trial counsel

informed him of the State's offer of 10 to 25 years. He testified that he wanted to accept the deal, but he had an issue with the restitution. He was asked on direct examination: "Did there come a point in time when you agreed to accept the offer that [the State] had made?" He responded: "Yes. I did want to accept the deal, on the condition that I wouldn't be responsible for all the restitution." *Id*. at 34. He maintained that he was innocent of the Cricket robbery and thus thought it unfair that he would pay restitution related to that crime. Goode testified that it was his understanding that his counsel conveyed that acceptance or conditional acceptance to the district attorney.

The prosecutor who proffered the July 13, 2012, offer of 10 to 25 years testified that the offer was never accepted, nor did the defense make any counteroffer. *Id*. at 59-61. The prosecutor noted that he would never have agreed to a deal that did not include Goode admitting guilt for the Cricket robbery. Goode's counsel also testified that he and his client did not discuss the issue of restitution, "not once, not ever." Exh. 123, p. 16.

The Nevada Court of Appeals affirmed the denial of this claim in Goode's state petition:

> First, Goode claimed counsel was ineffective for failing to file a motion to declare and enforce the plea agreement. Goode failed to demonstrate counsel was deficient or resulting prejudice. The district court held an evidentiary hearing and made the following findings: an offer was extended on July 13, 2012, and was set to expire on July 30, 2012; as of July 27, 2012, Goode rejected the offer; he did not attempt to accept the offer until July 31, 2012; and the State rejected the acceptance because it was one day late. The district court concluded the State is the master of its offer and the district court is powerless to participate in the plea negotiations. *See State v. Crockett*, 110 Nev, 838, 843, 877 P.2d 1077, 1079 (1994). Therefore, the district court denied this claim.
>
> We conclude substantial evidence supports the decision of the district court. Goode failed to demonstrate counsel should have filed a motion to declare and enforce the plea agreement or that such a motion would have been successful. Plea agreements are generally governed by contract principles. [FN 1.] *Id*. at 842, 877 P.2d at 1079. The plea agreement was not accepted by Goode within the reasonable time limit set by the State. Therefore, there was no plea agreement to declare and enforce. *See id*. at 843, 877 P.2d at 1079 ("As a general rule, then, we think that either party would be entitled to modify its position or even withdraw its consent to the bargain until the plea is tendered and the bargain as it then exists is

> accepted by the court." quoting *United States v. Savage*, 978 F.2d 1136, 1138 (9th Cir. 1992)). Accordingly, we conclude the district court did not err by denying this claim.
>
>     [FN 1: We decline Goode's request to revisit, overrule, or limit *Crockett*.]

Exh. 152, pp. 3-4.

Goode presents no credible evidence that a plea agreement existed to enforce. The records and recollections testified to by both his counsel and the prosecutor reflect that a plea offer expired on July 30, and Goode attempted to accept the offer on July 31. He has failed to demonstrate that the Nevada Court of Appeals' decision on federal ground 4 was contrary to or involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).  The court denies federal habeas relief on ground 4.

**Ground 5**

Goode argues that his counsel was ineffective for failing to object to the jury instructions regarding a deadly weapon because there was no evidence that the Airsoft gun in question was operable (ECF No. 7, pp. 25-29).

Jury instruction no. 22 stated:

> "Deadly weapon" means any instrument which, if used in the ordinary manner contemplated by its design and construction, will or is likely to cause substantial bodily harm or death; any weapon, device, instrument, material or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing substantial bodily harm or death; a gun, pistol, spring pistol, revolver or other firearm; any dirk, dirk-knife, sword, sword cane, or any knife which is made an integral part of a belt buckle or any instrument or weapon of the kind commonly known as a slung shot, sand club, sandbag or machete.
>
>     You are instructed that a firearm is a deadly weapon.

Jury instruction no. 23 provided:

"Firearm" means:

> 1. Any device, whether loaded or unloaded, operable or inoperable, designed to be used as a weapon from which a projectile may be expelled through the barrel by the force of any explosion or other form of combustion; or
>
> 2. Any device, whether loaded or unloaded, operable or inoperable, from which a metallic projectile, including any ball bearing or pellet, may be expelled by means of spring, gas, air or other force.
>
> Whether the weapon was unloaded or inoperable at the time of the crime is irrelevant.

Exh. 38, pp. 26-27.

Goode argued that *McIntyre v. State*, 764 P.2d 482, 483 (Nev. 1988), and *Bias v. State*, 784 P.2d 963, 964 (Nev. 1989), support his contention that the State had to prove his so-called toy gun had deadly capabilities at the time of the crime for the toy gun to qualify as a deadly weapon. Subsequently, however, in 2009, the Nevada Supreme Court concluded that if a weapon meets the statutory definition of firearm, it is a deadly weapon under state law regardless of whether it is unloaded or inoperable. *Berry v. State* 212 P.3d 1085, 1089 (Nev. 2009) (abrogated on other grounds by *State v. Castaneda*, 126 Nev. 478, 245 P.3d 550 (2010)).

The Nevada Court of Appeals affirmed the denial of this claim:

> Goode claimed counsel was ineffective for failing to object to jury instructions regarding the deadly weapon enhancement and for failing to propose instructions regarding the operability of the Airsoft gun. Goode claims counsel should have proposed an instruction stating "you are instructed that a toy firearm can be a deadly weapon within the meaning of this instruction, but only if at the time of the offense(s) the Defendant was capable of using it in a way to inflict death or great bodily harm." Goode claims this language is in line with *McIntyre v. State*, 104 Nev. 622, 624, 764 P.2d 482, 483 (1988), and *Bias v. State*, 105 Nev. 869, 871, 784 P.2d 963, 964 (1989), which he claims say a toy gun cannot be a firearm unless the toy gun is proven to have actual deadly capabilities at the time of the crime. [FN 2].
>
> [FN 2: The gun used in this case was an Airsoft pistol and there was testimony presented at trial that it was capable, at the time it was purchased, of firing a metallic object. *See Goode v. State*, Docket No. 62224 (Order of Affirmance, September 18, 2013).]

> The district court concluded this was not the correct standard because of amendments made to the deadly weapon statute, *see* NRS 193.165, and subsequent case law interpreting that statute, *see Berry v. State*, 125 Nev. 265, 276-77, 212 P.3d 1085, 1093 (2009) abrogated on other grounds by *State v. Castaneda*, 126 Nev. 478, 245 P.3d 550 (2010). Specifically, *Berry* states a firearm is a deadly weapon if it meets the statutory definition regardless of whether it was unloaded or inoperable at the time of the crime. *Id*. Substantial evidence supports the decision of the district court, and we conclude the district court did not err by denying this claim.

Exh. 152, 4-5.

Goode's arguments that the weapon he used was not a deadly weapon because it was inoperable at the time of the crimes is unavailing under relevant state statute and state case law. His counsel was not ineffective for failing to object to jury instructions that properly stated Nevada law or for not proffering instructions that were contrary to Nevada law. Goode has not shown that the Nevada Court of Appeals' decision on federal ground 5 was contrary to or involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 5.

The petition, therefore, is denied in its entirety.

### IV.     Certificate of Appealability

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right."  With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463

U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

Having reviewed its determinations and rulings in adjudicating Goode's petition, the court finds that none of those rulings meets the *Slack* standard. The court therefore declines to issue a certificate of appealability for its resolution of Goode's petition.

### V.     Conclusion

**IT IS THEREFORE ORDERED** that the petition (ECF No. 7) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk enter judgment accordingly and close this case.

DATED: 29 March 2022.

                                                                              _____
                                                                              ROBERT C. JONES
                                                                              UNITED STATES DISTRICT JUDGE